For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*

**Victor TEICHER, et al., Petitioners,**

**v.**

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

**Nos. 98–1287, 98–1414.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 30, 1999.

Decided June 1, 1999.

Robert G. Morvillo argued the cause for petitioners Victor Teicher and Victor Teicher & Co. With him on the briefs were Catherine M. Foti and Neil M. Barofsky. Diana D. Parker entered an appearance.

Roger J. Bernstein argued the cause and filed the briefs for petitioner Ross S. Frankel. Eugene A. Gaer entered an appearance.

David M. Becker, Deputy General Counsel, Securities & Exchange Commission, argued the cause for respondent. With him on the brief were Jacob H. Stillman, Solicitor, and Susan S. McDonald, Senior Litigation Counsel.

Before: SILBERMAN, WILLIAMS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Petitioners Victor Teicher and Ross Frankel were convicted of various charges of securities fraud, conspiracy and mail fraud for their participation in an insider trading scheme. In a later administrative proceeding, the Securities and Exchange Commission issued an order barring both petitioners from various branches of the securities industry, including association with registered and unregistered investment advisers. (Victor Teicher & Co. was also convicted and barred along with the individual; we refer to both simply as Teicher.) Both petitioners now challenge portions of the order as beyond the Commission's statutory authority. Teicher argues that the Commission's authority under § 203(f) of the Investment Advisers Act of 1940 (the "Advisers Act"), 15 U.S.C. § 80b–3(f), did not include the power to exclude him from association with an *un-*

*registered* investment adviser; the language of the statute is emphatically against the claim, and Teicher presents nothing adequate to overcome that language, assuming anything could be adequate. Frankel claims that § 15(b)(6) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78*o*(b)(6), which is triggered by a person's past, present or future association with a broker-dealer, does not supply the Commission with authority to exclude persons from the investment adviser industry; indeed, the logic of the statutory structure convinces us that Congress withheld that power.

\* \* \*

■ Section 203(f) of the Advisers Act provides in part:

The Commission, by order, shall censure or place limitations on the activities of any person associated, seeking to become associated, or, at the time of the alleged misconduct, associated or seeking to become associated *with an investment adviser*, or suspend for a period not exceeding twelve months or bar any such person from being associated with an investment adviser, if the Commission finds ..., that such censure, placing of limitations, suspension, or bar is in the public interest and that such person [has been convicted of specified offenses, including those of which Teicher was convicted].

15 U.S.C. § 80b–3(f)(emphasis added).

Some but not all investment advisers are required by the Act to register with the Commission. Among the exempt advisers, for example, would be one with fewer than 15 clients and not holding itself out to the public as an investment adviser nor acting as adviser to an investment company under the Investment Company Act of 1940. § 203(b), 15 U.S.C. § 80b–3(b). The term "investment adviser" in § 203(f) is unmodified, and the SEC read it to include any investment adviser, whether registered or not. Teicher says the term covers only a registered investment adviser. Since he was not associated with a registered in-

vestment adviser at the time of his wrongdoing or at the time of the Commission's administrative proceeding, he says that § 203(f) afforded it no authority to sanction him.

No language in the cited provision remotely suggests that its application is limited to "registered" investment advisers. And the Act explicitly defines an investment adviser as "any person who, for compensation, engages in the business of advising others ... as to the advisability of investing in, purchasing, or selling securities." § 202(a)(11) of the Investment Advisers Act, 15 U.S.C. § 80b–2(a)(11). Again, no mention of registration. As the Act in various places specifies "registered" advisers, see, e.g., §§ 203(d) & 208, 15 U.S.C. §§ 80b–3(d) & 80b–8, and in others those "exempt[ ] from registration," see §§ 204 & 205, 15 U.S.C. §§ 80b–4 & 80b–5, there seems every reason to believe that when it uses the term unmodified, it means both.

Teicher claims that our decision in *Wallach v. SEC,* 202 F.2d 462 (D.C.Cir.1953), construed the phrase "any broker or dealer" in an analogous provision in the Exchange Act to encompass only "registered" brokers or dealers; thus, he argues, § 203(f) in the Advisers Act should be similarly limited to "registered" investment advisers. In reality *Wallach* is a good deal narrower. There the SEC tried to force the joinder of a broker-dealer's employee-salesman as a party in disciplinary proceedings against the broker-dealer. We rejected the Commission's argument that the statute, which in terms focused on brokers and dealers, would reach their employees. The Commission's theory was simply that such an expanded proceeding would be much more practical—its findings would be res judicata as to the salesman as well as the firm, to be used against the salesman if he ever sought registration. See 202 F.2d at 109–10. The Commission did *not* argue that a salesman with

a broker-dealer was an "unregistered" broker or dealer. (Such a theory seems unlikely to have been helpful for the SEC's claim, as the statute authorized only the denial or revocation of registration as a broker or dealer, and was thus necessarily limited to a person or firm seeking or already holding such a license.)[1] Here, the Act establishes some rules applying to unregistered investment advisers, some applying to registered ones, and some, such as § 203(f), that give every appearance of applying to both. The Commission's reading honors that structure.

Teicher calls our attention to the fact that when originally enacted in 1940 § 203 applied only to registered investment advisers—in the sense that it provided only for the denial, revocation or suspension of a registration as an investment adviser. See 15 U.S.C. § 80b–3(d) (1940). But since 1940 Congress has amended the Act and expanded the array of sanctions far beyond the early focus on registration. Now the SEC's sanction power—even looking only at that granted by § 203(f)— explicitly covers persons merely associated with or seeking association with investment advisers and ranges from censure to an outright ban on association with an investment adviser.

Teicher quotes an item from the legislative history of the 1970 amendment that added § 203(f): "[The proposed amendments] would strengthen existing disciplinary controls over *registered* investment advisers by making them more comparable to the provisions of Section 15(b) of the Securities Exchange Act relating to broker-dealers in securities." S.Rep. No. 91–184, at 44 (1969) (emphasis added). But such a use of the adjective "registered" in a Senate report is not of much help, especially when the statute itself offers no apparent ambiguity that the reference might help resolve. See *Ratzlaf v. United States,* 510 U.S. 135, 147–48, 114 S.Ct. 655,

1. By means of a later amendment Congress explicitly granted the SEC authority to discipline persons "associated" with a broker or dealer. See § 15(b)(6) of the Exchange Act, 15 U.S.C. § 78o(b)(6).

126 L.Ed.2d 615 (1994). And the SEC has pointed to references in the same Senate Report that describe the addition with no mention of "registered." See S.Rep. No. 91–184, at 46–47; see also H.R.Rep. No. 91–1382, at 41 (1970) (same). Teicher points to several other items of legislative history, bits not even associated with the enactment of § 203, but they are even less convincing. Reviewing the Commission's statutory interpretation under the principles of *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), we find that Teicher has not effectively challenged the Commission's reading of the Act's unambiguous language.

\* \* \*

■ Frankel's claim rests on the scope of a phrase that could be very broad—out of context. It appears in the following section, under which he was sanctioned:

> With respect to any person who is associated, who is seeking to become associated, or, at the time of the alleged misconduct, who was associated or was seeking to become associated with a broker or dealer ... the Commission, by order, shall censure, *place limitations on the activities or functions of such person,* or suspend for a period not exceeding 12 months, or bar such person from being associated with a broker or dealer, ... if the Commission finds ... that such person [has been convicted of securities fraud or enjoined against conduct in violation of the securities laws].

§ 15(b)(6) of the Exchange Act, 15 U.S.C. § 78*o*(b)(6)(A) (emphasis added). The SEC's implicit reading is that this section authorizes it to "place," on any person guilty of the specified substantive violations, any "limitation[]" it chooses on his participation in any of the branches of the securities industry for which it administers an occupational licensing regime.

Frankel focuses primarily on two objections to the SEC's reading. First, he points out that the word "limitation" ordinarily has a meaning quite distinct from that of "bar." Second, the passage shows

a quite intentional progression of penalty from mild to severe—censure, limitation, suspension, and finally bar; the SEC's interpretation flouts this progression, elevating "place limitations" to a scope broader than the climax penalty, "bar," which is explicitly limited to association with a *broker-dealer.*

We need not decide whether these arguments alone would carry the day for Frankel; the SEC's interpretation also suffers fatal structural difficulties. Clearly the "place limitations" language requires some concept of the relevant domain. Even the Commission doesn't suggest that the phrase allows it to bar one of the offending parties from being a retail shoe salesman, or to exclude him from the Borough of Manhattan.

In the opinion in which the Commission initiated its claim to effect a "collateral bar" under § 15(b)(6), i.e., a bar outside the broker-dealer branch of the securities industry, *Meyer Blinder,* 65 CCH SEC Docket 1378, 1380–82 (1997), it relied on a general principle favoring "flexibl[e]" construction of the securities laws to effectuate their remedial purposes, *id.* at 1381 (citing *Central Bank of Denver, N.A. v. First Interstate Bank,* 511 U.S. 164, 185–86, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994)), and three specific points that we address below—(1) that the "collateral bar" concept enables it to do in one proceeding what would otherwise require two; (2) that it prevents the risk of a regulatory "gap" through which a miscreant could for a time participate in the securities market unbeknownst to the Commission; and (3) that legislative history of a later-enacted provision shows that the Commission's reading of the statute is in accord with congressional intent. See *Blinder,* 65 CCH SEC Docket at 1381–83. Neither in its brief nor in *Blinder* did the agency articulate an explicit limiting principle other than the idea of a bar of the offender from engaging in "activities in other securities professions." See *Blinder,* 65 CCH SEC Docket at 1383; Government Br. at 45–46. But

such a reading, if lawful, would allow the Commission to bar Frankel from becoming a commercial banker or a mergers-and-acquisitions attorney, activities linked to the securities industry but not under the Commission's jurisdiction. Because of the Commission's regulatory "gap" claim, however, we infer that it is only seriously claiming that the "place limitations" power enables it to bar an offender from a branch of the securities industry from which it might later have explicit authority to exclude him. Even this claim, however, turns out to contradict the way in which Congress has structured the relevant occupational license regimes and related sanctions.

The SEC administers three systems of occupational licensing. The Advisers Act, as we saw when considering Teicher, covers investment advisers and associated persons. §§ 203(e) & (f), 15 U.S.C. §§ 80b–3(e) & (f). The Exchange Act, under which it acted against Frankel, covers broker-dealers and associated persons. §§ 15(b)(4) & (6), 15 U.S.C. §§ 78o(b)(4) & (6). And another section of the Exchange Act covers municipal securities dealers and associated persons. §§ 15B(c)(2) & (4), 15 U.S.C. §§ 78o–4(c)(2) & (4). In each regime, there is, as to associated persons, an almost identically worded threshold nexus requirement. Thus, recall that the sentence governing Frankel began:

> With respect to any person who is associated, who is seeking to become associated, or, at the time of the alleged misconduct, who was associated or was seeking to become associated with a broker or dealer ... the Commission, by order, shall....

§ 15(b)(6) of the Exchange Act, 15 U.S.C. § 78o(b)(6)(A). The one used against Teicher also demands a nexus, but the required link is to investment advisers:

> The Commission, by order shall censure or place limitations on the activities of any person associated, seeking to become associated, or, at the time of the alleged misconduct, associated or seeking to become associated with an investment adviser....

§ 203(f), Advisers Act, 15 U.S.C. § 80b–3(f). The provision for municipal securities dealers follows precisely the structure of the investment adviser provision, replacing "investment adviser" with "municipal securities dealer." § 15B(c)(4), 15 U.S.C. § 78o–4(c)(4). And each provision has the "place limitations" language in dispute here.

The SEC believes that once the threshold requirement of any of the particular provisions has been satisfied, it should be able to use the "place limitations" language to move seamlessly from one licensing regime to another, imposing unlimited sanctions throughout all the branches of the industry within its bailiwick. Thus, once it found Frankel met the threshold requirement of being associated with a broker or dealer under the Exchange Act, it could bar him from association with any investment adviser—a sanction that is only specifically available under the Advisers Act.

In a letter submitted after oral argument, the SEC says, in response to the suggestion that its reading of the provisions virtually eliminates the nexus requirement, that such a view begs the question—which is the meaning of the "place limitations" phrase. Of course in a way that is true. But Congress's thrice repeated use of a nexus requirement focused on a single branch of the industry seems to us to underscore a congressional determination to create separate sets of sanctions, each triggered by an individual's satisfying the industry-specific nexus.

The SEC objects that this forces it to do in two proceedings what it would be more convenient to do in one. First we note that as we read the statutes, they simply do not permit the Commission to impose sanctions in any specific branch until it can show the nexus matching that branch. The Commission's real objection is thus that it must wait—perhaps indefinitely. But this does not seem especially vexing. Rather, it seems entirely consonant with Congress's having set up three separate systems for denying the benefits of "asso-

ciation" with licensed entities in the several systems. The provisions lead in the aggregate to a tailoring of sanctions fitted either to a looming menace (the person's being in or seeking to get into a branch of the industry), or to a malfeasance committed while in a branch.

The Commission identifies one respect in which a branch-by-branch reading of the statutes might create a risk to investors. While the Commission would get notice automatically if Frankel sought to become associated with a registered investment adviser, see Rule 204–1(b)(1), 17 CFR § 275.204–1(b)(1), and thus could start a proceeding under § 203(f), it would get no such alert for his association with an *unregistered* investment adviser. But assuming the Commission cannot remedy this by an equivalent notice provision for such advisers, that gap can only be because Congress withheld the authority—presumably for good reason, perhaps relating to their limited scale or regulation by other jurisdictions. A congressional discount of a peril is hardly the strongest argument why we should see it as urgent.

 The SEC further points to the legislative history of the 1987 amendments, adding the "place limitations" language to the sanction provision for municipal security dealers, and thus making it fully parallel to that for investment advisers and broker-dealers. The Senate Report accompanying the change says:

> The Commission regards this as a desirable change in the law because the limitations authority is an important recognition by Congress of the need for flexibility to fashion sanctions that fit the offense ˙and situation presented. For example, the Commission may use its "limitations" authority in the broker-dealer area to suspend the operation of a single branch office, rather than an entire firm, where misconduct was localized; or to confine an offending employee to nonsupervisory positions where an outright bar or suspension is unnecessary; *or to bar persons formerly associated with broker-dealers from entering other securities professions where they might continue to perpetrate frauds upon unsuspecting investors.*

S.Rep. No. 100–105, at 25 (1987) (emphasis added). The passage offers several examples of options indisputably added by insertion of the "place limitations" phrase, but, as the SEC argues, it appears to presuppose the Commission's broad understanding. And "post-enactment legislative history," purporting to describe an earlier enactment (or, as here, language paralleling an earlier provision), may sometimes be relevant in establishing ambiguity in the phrase commented upon. See *McCreary v. Offner,* 172 F.3d 76, 82–83 (D.C. Cir.1999). But cf. *United States ex rel. Long v. SCS Business & Technical Institute, Inc.,* 173 F.3d 870, 878 (D.C. Cir.1999) (declaring post-enactment legislative history as having "only marginal, if any, value."). At most, then, all the legislative history can do is to buttress the Commission's claim that the "place limitations" language is ambiguous, and thus its interpretation is entitled to *Chevron* deference if it is reasonable and consistent with the statutory purpose. See *Troy Corp. v. Browner,* 120 F.3d 277, 285 (D.C.Cir.1997) (citing *Chevron,* 467 U.S. at 843). But even assuming ambiguity, we do not see the criterion of reasonableness satisfied here. "The meaning of statutory language, plain or not, depends on context." *Bailey v. United States,* 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (citations omitted). The context—a rather elaborate structure of separate provisions with distinct threshold requirements—suggests that Congress meant the SEC would make those threshold findings before administering the corresponding sanction.

\* \* \*

We affirm the SEC's order barring Teicher from associating with any investment adviser, registered or unregistered, but find the order in excess of the Commission's powers insofar as it purports to

bar Frankel from becoming associated with an investment adviser.

*So ordered.*