# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 23, 2015         Decided July 10, 2015

No. 14-1126

MONTFORD AND COMPANY, INC., DOING BUSINESS AS
MONTFORD ASSOCIATES AND ERNEST V. MONTFORD, SR.,
PETITIONERS

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

———

On Petition for Review of an Order of
the Securities & Exchange Commission

———

*Ryan C. Morris* argued the cause for petitioners. With him on the briefs were *Jeffrey T. Green*, *Tobias S. Loss-Eaton*, and *Christopher R. Mills*.

*Theodore J. Weiman*, Senior Counsel, Securities and Exchange Commission, argued the cause for respondent. With him on the brief were *Michael A. Conley*, Deputy General Counsel, *Jacob H. Stillman*, Solicitor, and *Dominick*

*V. Freda*, Senior Litigation Counsel. *Susan S. McDonald*, Attorney, entered an appearance.

Before: MILLETT and PILLARD, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Petitioners Montford and Company, Inc., and Ernest V. Montford, Sr., petition this court for review of a final order of the Securities and Exchange Commission finding that petitioners violated Sections 204, 206, and 207 of the Investment Advisors Act of 1940, 15 U.S.C. §§ 80b-4, 80b-6(1)–(2), 80b-7, and Advisors Act Rule 204-1(a)(2), 17 C.F.R. § 275.204-1(a)(2). *In re Montford & Co., Inc.*, Investment Advisors Act Release No. 3829, 2014 WL 1744130 (May 2, 2014). The Commission determined that, by failing to disclose $210,000 in fees received from an investment manager, petitioners misrepresented that they were providing independent and conflict-free advice. The Commission imposed industry bars and cease-and-desist orders, ordered disgorgement, and levied a total of $650,000 in civil penalties. Petitioners challenge the order, arguing that the enforcement action was untimely under Section 4E of the Securities Exchange Act of 1934, 15 U.S.C. § 78d-5. Petitioners further contend that the Commission abused its discretion in imposing the disgorgement order and civil penalties. Holding that the Commission reasonably interpreted Section 4E as not imposing a jurisdictional bar to late-filed actions, and that the Commission acted reasonably in imposing its sanctions, we deny the petition for review.

# I. BACKGROUND

## A. *Factual Background*

In 1989, Ernest V. Montford, Sr., (hereinafter "Montford") founded Montford and Company, Inc. (does business as, and hereinafter, "Montford Associates"). Montford Associates operated as a registered investment advisor to institutional investors. Montford Associates did not execute securities transactions on behalf of its clients; rather, Montford Associates recommended various investment managers, monitored client portfolios, and periodically reported to its clients on the performance of their investments. During 2009 and 2010, Montford Associates had approximately thirty clients, most of whom were pension funds, school endowments, hospitals, and non-profit organizations. The firm charged an annual advisory fee ranging from eight to twenty basis points of each client's assets under management. Petitioners "managed over $800 million in investment assets, earning gross revenues of $600,000 in 2009 and $830,000 in 2010." *Montford & Co.,* 2014 WL 1744130, at *2.

Montford advertised his firm as an "independent" and "conflict-free" advisor that would provide "impartial" advice. *See id*. at *2–*3. Commission rules required Montford Associates, as a registered investment advisor, to file annually Form ADV, a uniform registration form and disclosure statement. The firm's 2009 and 2010 forms described the firm as an "independent investment advisor" that would "[a]void any material misrepresentation in any…investment recommendation" and "[d]isclose to clients…all matters that reasonably could be expected to impair [the firm's] ability to make unbiased and objective recommendations." *Id*. at *2. The firm further claimed that it did "not accept any fees from

investment managers or mutual funds." *Id.* at \*3. Montford Associates' website linked to an article quoting Montford as stating that clients "need a strategy they can trust, because investments…should be based on merit, not…undisclosed compensation." *Id.*

The Commission's action against petitioners centers on Montford's relationship with Stanley Kowalewski, an investment manager specializing in hedge funds. In 2003, Montford began recommending Kowalewski (then owner and operator of Phoenix Advisors, Inc.) as an investment manager to his clients. In 2005, Kowalewski joined Columbia Partners, LLC Investment Management ("Columbia"). Montford subsequently advised his clients to transfer their assets to Columbia and continued to recommend Kowalewski as an investment manager. By 2009, ten of Montford's clients had followed Kowalewski to Columbia. *Id*. at \*4.

In June 2009, Kowalewski told Montford that he was leaving Columbia to start his own investment management firm, SJK Investment Management LLC ("SJK"). Montford told Kowalewski that he would try to convince his clients to transfer their Columbia investments to SJK and that he would assist in administering the transfers. Over the following months, Montford and his staff individually met with the ten clients invested with Columbia to recommend that they transfer their assets to SJK. In August 2009, Montford called Kowalewski and told him, "I need to be paid for all this work." *Id*. Kowalewski agreed, but did not specify an amount. In October 2009, Kowalewski agreed to give petitioners an initial payment of $130,000. Montford maintained that he simply requested reimbursement for the administrative costs his firm incurred in transferring client investments from Columbia to SJK; Montford claimed that Columbia was uncooperative and SJK was understaffed, so

his firm took on the bulk of the work. *See id.* at *15; Pet'rs' Br. 7.

In November 2009, having yet to receive the agreed upon payment, Montford Associates sent SJK an invoice for $130,000 for "Consulting Services for the SJK Investment Management LLC Launch July 15th–October 30, 2009." *Montford & Co.,* 2014 WL 1744130, at *5. Montford Associates then sent a revised invoice, which, at Kowalewski's request, changed the description of the services provided to "Marketing and Syndication Fee for SJK Investment Management LLC Launch July 15th–November 30, 2009." *Id.* On January 4, 2010, SJK paid petitioners $130,000. In November 2010, Montford Associates requested a second payment from SJK, sending an $80,000 invoice which also described the payment as a "Marketing and Syndication Fee." *Id.* Later that month, SJK wired petitioners $80,000. In addition to these payments, Kowalewski waived fees for Montford's personal IRA, and went on a three-day fishing trip with Montford, paying for Montford's transportation, food, and lodging. *Id.* at *8.

Montford ultimately convinced nine of his clients to transfer their investments to SJK; collectively, these clients invested $80 million in SJK. *Id.* at *5. Montford did not disclose to any of his clients that he had provided assistance to SJK, or that he requested or received fees from Kowalewski. Montford strongly encouraged his clients to invest with Kowalewski and SJK, even when his clients expressed reservations with Kowalewski's investment strategy, experience, and alleged misconduct. *Id.* at *6–*7.

In January 2011, the Commission filed a civil enforcement action against SJK and Kowalewski, charging them with securities fraud. The complaint alleged that

Kowalewski had diverted to himself millions of dollars that were invested in SJK. *See SEC v. Kowalewski*, Litigation Release No. 21800, 2011 WL 52096 (Jan. 7, 2011). At this time, the details of petitioners' payment arrangement with SJK came to light. Many of Montford Associates' clients terminated their business with the firm after learning of the payments. *See Montford & Co.*, 2014 WL 1744130, at *5.

### B. Procedural Background

After discovering Kowalewski's fraud, the Commission began investigating Montford and his firm. In March 2011, the Commission issued to petitioners a "Wells notification," a letter in which Division of Enforcement staff advises the target of an ongoing investigation of the nature of the investigation and potential violations. *See id.* at *9 n.60. On September 7, 2011, 187 days after issuing the Wells notification, the Commission instituted administrative proceedings against petitioners. *See In re Montford & Co., Inc.*, Investment Advisors Act Release No. 3273, 2011 WL 3916057 (Sept. 7, 2011). The Commission's Division of Enforcement claimed that Montford received undisclosed fees from SJK and Kowalewski for promoting SJK. Alleging that Montford Associates' promotional materials and regulatory filings contained inaccuracies regarding the firm's independence, the Division charged that petitioners violated the Investment Advisors Act's reporting and antifraud provisions, 15 U.S.C. §§ 80b-4, 80b-6(1)–(2), 80b-7, and Advisors Act Rule 204-1(a)(2), 17 C.F.R. § 275.204-1(a)(2).

Section 4E of the Exchange Act, 15 U.S.C. § 78d-5(a)(1), provides that "[n]ot later than 180 days after the date on which Commission staff provide a written Wells notification to any person, the Commission staff shall either file an action against such person or provide notice to the Director of the

Division of Enforcement of its intent to not file an action." Petitioners filed a motion to dismiss the proceeding as time-barred under Section 4E because the Division failed to institute the action within 180 days after issuing a Wells notice. In response, the Division submitted a declaration that the Director had extended the deadline under 15 U.S.C. § 78d-5(a)(2), which allows the Director to extend the deadline "for certain complex actions." The presiding Administrative Law Judge (ALJ) denied petitioner's motion to dismiss for lack of jurisdiction, accepting the Commission's assertion that the deadline was properly extended. *See In re Montford & Co, Inc.*, Investment Advisors Act Release No. 457, 2012 WL 1377372, at *11 (Apr. 20, 2012).

After a hearing, the ALJ issued an initial decision that petitioners violated Sections 204, 206, and 207 of the Advisors Act, 15 U.S.C. §§ 80b-4, 80b-6(1)–(2), 80b-7, and Advisors Act Rule 204-1(a)(2), 17 C.F.R. § 275.204-1(a)(2). *See id.* at *12–*15. The ALJ again rejected petitioners' jurisdictional argument, concluding that because "the Director extended the deadline…one can deduce that he/she made the [complexity] determination" required by the statute. *Id*. at *11. The ALJ barred Montford from the securities industry; ordered petitioners to cease and desist from future violations; ordered disgorgement of $210,000; and ordered Montford to pay $150,000 and Montford Associates to pay $500,000 in civil penalties. *See id*. at *22. Petitioners appealed to the full Commission, which conducted an independent review of the record.

The Commission affirmed the ALJ's findings and sanctions. *See Montford & Co.*, 2014 WL 1744130. The Commission rejected petitioners' argument that Section 4E barred the action. The Commission, construing Section 4E in

"the first instance," *id*. at \*10, found that "dismissal of an action is not the appropriate remedy when the time periods set forth in Section 4E are exceeded," *id*. at \*12. The statute says nothing about the consequence for noncompliance, and courts have been hesitant to infer a jurisdictional consequence for failure to comply with an internal deadline for federal agency action. *Id*. at \*11.

The Commission also rejected Montford's challenge to the disgorgement order and civil penalties. Petitioners argued that they should not disgorge the $210,000 in payments received from SJK "because 'receipt of the money itself was [not] wrongful' under the securities laws." *Id*. at \*22 (quoting Reply Br.). The Commission disagreed, determining that there was a connection between the nondisclosure violations and the $210,000, as the payments from SJK were predicated on not disclosing those payments. *Id*. The Commission further found that third-tier civil penalties were appropriate, as petitioners' misconduct "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "resulted in substantial pecuniary gain." *Id*. at \*24.

Montford and Montford Associates petition this court for review of the Commission's order. We will deny that petition for the reasons stated below.

## II. ANALYSIS

"The findings of the Commission as to the facts, if supported by substantial evidence, shall be conclusive." 15 U.S.C. § 80b-13(a). The "interpretation of the ambiguous text" of a federal securities statute, "in the context of formal adjudication, is entitled to deference if it is reasonable." *SEC v. Zandford*, 535 U.S. 813, 819–20 (2002). Our "review of

the Commission's remedial decisions is deferential." *Kornman v. SEC*, 592 F.3d 173, 176 (D.C. Cir. 2010).

### A. *Petitioners' Challenge to the Timeliness of the Enforcement Action*

Section 4E of the Exchange Act directs that "[n]ot later than 180 days after the date on which Commission staff provide a written Wells notification to any person, the Commission staff shall either file an action against such person or provide notice to the Director of the Division of Enforcement of its intent to not file an action." 15 U.S.C. § 78d-5(a)(1). The section also contains a procedure for extending the deadline for "certain complex actions." *Id.* § 78d-5(a)(2). The Commission brought an enforcement action against Montford and Montford Associates 187 days after issuing a Wells notice to petitioners. In a later declaration, an attorney with the Division of Enforcement attested that the Director of the Division had extended the deadline. Petitioners argue that the Commission lacked jurisdiction to bring an enforcement action, as the Commission brought the action too late and did not follow the procedures for extending the deadline. We do not agree. We hold that the Commission's interpretation of Section 4E, as not imposing a jurisdictional bar, is reasonable and entitled to deference. We thus do not need to address the Commission's alternative argument that it had properly extended the deadline.

We defer to the Commission's reasonable interpretation of Section 4E. "The Commission's interpretation of its authorizing statutes is entitled to deference under the familiar two-pronged test set forth in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984)." *Kornman*, 592 F.3d at 181. "When a court reviews an agency's construction

of the statute which it administers, it is confronted with two questions." *Chevron*, 467 U.S. at 842. First, the court must determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

We do not owe the Commission's interpretation any less deference because the Commission interprets the scope of its own jurisdiction. As the Supreme Court recently held, "a court need not pause to puzzle over whether the interpretive question presented is 'jurisdictional.' If 'the agency's answer is based on a permissible construction of the statute,' that is the end of the matter." *City of Arlington v. FCC*, 133 S. Ct. 1863, 1874–75 (2013) (quoting *Chevron*, 467 U.S. at 842). Nor is it relevant that the Commission's interpretation is the result of adjudication, rather than notice-and-comment rulemaking. "Within traditional agencies," such as the SEC, "adjudication operates as an appropriate mechanism…for the exercise of delegated lawmaking powers, including lawmaking by interpretation." *Martin v. Occupational Safety & Health Rev. Com'n*, 499 U.S. 144, 152 (1991) (citing *SEC v. Chenery Corp.*, 332 U.S. 201–03 (1947)); *see also Teicher v. SEC*, 177 F.3d 1016, 1019 (D.C. Cir. 1999) (extending *Chevron* deference to Commission's interpretation, expressed in an adjudicatory order, of the Investment Advisors Act of 1940, 15 U.S.C. § 80b-3f).

We hold that Section 4E is ambiguous under *Chevron* Step 1. By not specifying any consequence for the Commission's failure to bring an enforcement action within

180 days after issuing a Wells notification, Congress has not "directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. Petitioners argue that Section 4E's "language, structure, purpose, and legislative history all establish that the deadline is mandatory and jurisdictional." Pet'rs' Br. 13. Petitioners point to the statute's use of "shall," the inclusion of a detailed extension process for complex cases, "which would be pointless if the deadline had no force," *id.*, and the provision's purpose of spurring the Commission to act promptly so that recipients of Wells notices do not have the cloud of an investigation hanging over them, *id.* at 14. While these arguments demonstrate that it might be reasonable to interpret Section 4E as having a jurisdictional consequence, these arguments do not show that the statute *forecloses* other interpretations. Since the "statute is silent...with respect to the specific issue," we turn to the question of "whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843.

We further hold that the Commission's interpretation of Section 4E is reasonable under *Chevron* Step 2. The Commission stated, "Based on the text and legislative history of Section 4E and Supreme Court precedent interpreting similar statutes, we find that the provision is intended to operate as an internal-timing directive, designed to compel our staff to complete investigations, examinations, and inspections in a timely manner and not as a statute of limitations." *Montford & Co.*, 2014 WL 1744130, at *12. The Commission's interpretation of Section 4E relied on precedent holding "that congressional enactments that prescribe internal time periods for federal agency action without specifying any consequences for noncompliance do not necessitate dismissal of the action if the agency does not act within the time prescribed." *Id.* at *11. The Commission

discussed *Brock v. Pierce County*, 476 U.S. 253 (1986), and *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993). In *Brock*, the Court held that the Secretary of Labor's failure to act by a 120-day deadline did not foreclose subsequent action, where the statute did not identify a consequence for missing the deadline. 476 U.S. at 259. The Court held that the statute's use of "shall," together with an express deadline "does not, standing alone, divest the [agency] of jurisdiction to act after [the deadline.]" *Id*. at 266. In *James Daniel Good*, the Court held that when "a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." 510 U.S. at 63–64. The Commission found that Section 4E was similar to the deadlines in *Brock* and *James Daniel Good*, and determined that it did not lack jurisdiction to bring an enforcement action after the 180-day deadline passed.

The Commission's analysis of Supreme Court precedent, and its application of that precedent to Section 4E, is sound. As the Supreme Court recently reminded us, time limitations for filings in statutes are presumptively non-jurisdictional. *See United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1634–35 (2015). Nothing in the text or structure of Section 4E overcomes the strong presumption that, where Congress has not stated that an internal deadline shall act as a statute of limitations, courts will not infer such a result. *Cf. Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003) ("Nor, since *Brock*, have we ever construed a provision that the Government 'shall' act within a specified time, without more, as a jurisdictional limit precluding action later."). As in *Brock*, "[t]here is simply no indication in the statute or its legislative history that Congress intended to remove the [Commission's] enforcement powers if" Commission staff fails to file an action within 180 days of issuing a Wells

notification. 476 U.S. at 266. At most, petitioners' arguments to the contrary demonstrate that Section 4E is ambiguous; petitioners have not shown that the Commission's interpretation is unreasonable. Accordingly, we defer to the Commission's reasonable interpretation of the statute it administers. *See City of Arlington*, 133 S. Ct. at 1874–75.

Because we hold that the 180-day time period is not jurisdictional, we need not decide whether the Director of the Division of Enforcement properly extended the deadline per the statutorily prescribed procedures. *See* 15 U.S.C. § 78d-5(a)(2).

### B. *Petitioners' Challenge to the Disgorgement Order and Civil Fines*

In this petition, "Montford recognizes his wrongdoing, and he does not dispute that the bar order, cease-and-desist order, and some financial penalty are appropriate." Pet'rs' Br. 39. However, Montford contends that even if the Commission had jurisdiction to bring an enforcement action, "the disgorgement order is unlawful and the civil penalties are entirely disproportionate and arbitrary." *Id*. We disagree and affirm the Commission's imposition of sanctions.

Petitioners argue that the disgorgement order is unlawful because there must be a causal connection between the misconduct and the funds to be disgorged. "Disgorgement deprives wrongdoers of the profits obtained from their violations." *Zacharias v. SEC*, 569 F.3d 458, 472 (D.C. Cir. 2009). Thus, "[t]he touchstone of a disgorgement calculation is identifying a causal link between the illegal activity and the profit sought to be disgorged." *SEC v. UNIOIL*, 951 F.2d 1304, 1306 (D.C. Cir. 1991) (per curiam) (Edwards, J., concurring). The violations in this case, petitioners maintain,

"arose not from Montford's receipt of the payments from SJK, but rather from his failure to disclose those payments." Pet'rs' Br. 41. Petitioners thus contend that there is no causal connection, as the payments from Kowalewski cannot have been caused by petitioners' subsequent failure to disclose those payments; "it is impossible for the violations to have caused the payments because the latter preceded the former." *Id.* at 40.

We are not persuaded by this argument. The Commission has flexibility in ordering disgorgement, as it is "an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws." *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989). When calculating disgorgement, "separating legal from illegal profits exactly may at times be a near-impossible task." *Id*. at 1231. Thus, "disgorgement need only be a reasonable approximation of profits causally connected to the violation." *Id.* Under this standard, the Commission identified a sufficient causal connection between the payments from SJK and the petitioners' violations. The Commission found that SJK paid Montford in part to persuade clients to invest with SJK. *Montford & Co.*, 2014 WL 1744130, at *15 ("Montford twice admitted that SJK paid him, at least in part, to convince clients to stay with SJK."). The Commission further determined that "[c]lient testimony demonstrated that, absent [petitioners'] deception and failure to disclose the conflict, SJK would not have paid [petitioners] the $210,000 because the clients would not have retained [petitioners] as their advisers and would not have invested in SJK." *Id*. at *22. These conclusions are reasonable and supported by substantial evidence. We will thus uphold the Commission's disgorgement order.

Petitioners argue that the Commission erred when it imposed third-tier civil penalties, as the Commission did not make the required determination that petitioners' conduct "resulted in substantial pecuniary gain." 15 U.S.C. § 80b-3(i)(2)(C). Petitioners contend that their conduct did not result in substantial pecuniary gain for the same reason that the disgorgement order was unlawful: "the disclosure violations followed, and thus could not have caused, the undisclosed payments from SJK. Accordingly, the violations cannot have 'resulted in' Montford's receipt of the payments." Pet'rs' Br. 43 (citation omitted). For the same reasons that we rejected petitioners' disgorgement argument, we reject this argument. The petitioners further argue that "the penalties imposed by the Commission exceed its discretion because they are unsupported by the record and do not adequately account for mitigating facts." *Id*. at 44. We reject this argument as well. The Commission considered and discussed the appropriate statutory factors in reaching its decision. *See Montford & Co*., 2014 WL 1744130, at *24–*25 (discussing 15 U.S.C. § 80b-3(i)(3)). It acknowledged Montford's mitigation arguments, finding them unconvincing or "outweighed by the other public interest factors supporting a significant civil monetary penalty." *Id*. at *24. Given that we owe "great deference to the SEC's decisions as to the choice of sanction," *Seghers v. SEC*, 548 F.3d 129, 135 (D.C. Cir. 2008), we will affirm the Commission's imposition of civil monetary penalties.

## III. CONCLUSION

While Section 4E of the Securities Exchange Act of 1940, 15 U.S.C. § 78d-5, directs the Securities and Exchange Commission to bring an enforcement action "[n]ot later than 180 days after the date on which Commission staff provide[s] a written Wells notification to any person," we defer to the

Commission's interpretation that this provision does not deprive it of jurisdiction to bring an enforcement action brought more than 180 days after issuing a Wells notification. We further hold that the Commission established the required causal connection to order the disgorgement of the $210,000 in payments made by Kowalewski to petitioners, and that the Commission did not abuse its discretion or otherwise exceed its authority in imposing a total of $650,000 in civil monetary penalties on petitioners. Thus, we deny the petition for review.

*So ordered.*